UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARIA DUGAS AND PAUL DUGAS** | **CIVIL ACTION** |
| | **NO: 19-10073** |
| **VERSUS** | |
| | **SECTION: T(2)** |
| **JAMEY FONTENOT, STEPHEN JOLLY, VINCENT DIFAZIO, DAVID MELANCON, CHIEF BRYAN P. ZERINGUE, THIBODAUX POLICE DEPARTMENT, AND THE CITY OF THIBODAUX** | |

## ORDER

Before the Court is a Motion for Summary Judgment[1] filed by, Jamey Fontenot ("Captain Fontenot"), Stephen Jolly ("Officer Jolly"), Vincent Distefano, incorrectly referred to as Vincent Difazio, ("Officer Distefano"), David Melancon ("Officer Melancon"), Chief Bryan P. Zeringue ("Chief Zeringue")(collectively, "Officers"), the Thibodaux Police Department ("TPD") and the City of Thibodaux ("the City") (collectively, "Defendants"). Maria Dugas ("Plaintiff") and her husband Paul Dugas filed an opposition.[2] For the following reasons, the Motion for Summary Judgment[3] is **GRANTED.**

## BACKGROUND

The incident at issue occurred on May 5, 2018, at the Thibodaux Fireman's Fair on Tiger Drive in Thibodaux.[4] Plaintiff claims she was walking to her vehicle to leave the fair when her husband stopped to answer a call.[5] While waiting, Plaintiff watched TPD officers talk to a crowd of people about drone activity on the fair grounds.[6] Plaintiff claims that, although she stood away from the

---

[1] R. Doc. 20-3.
[2] R. Doc. 27.
[3] R. Docs. 20-3.
[4] *Id* at 1.
[5] *Id.*
[6] *Id.*

1

crowd, Officers Fontenot and Jolly came up to her and informed her she needed to leave the area.[7] Officer Jolly told her she needed to exit at the Tiger Drive gate, but Plaintiff explained that her vehicle was parked on the opposite side of the lot and she would leave through the exit nearest to her car.[8] Officer Jolly then allegedly pushed Plaintiff to the Tiger Drive exit, handcuffed her, and seized her cellphone.[9] Plaintiff states she was taken to a tent, detained for several hours, prohibited from speaking to an attorney, and observed an officer looking through her cell phone.[10]

Defendants contend that while investigating the drone activity, the officers took the individual with the drone, along with some other individuals, to the police tent for questioning, where Plaintiff intervened in their investigation.[11] Defendants claim that Plaintiff kept offering her opinions about the investigation, speaking over the officers, and also tried to instruct the Officers on what should be done.[12] It is undisputed that Plaintiff was not known to any of the individuals being questioned about the drone.[13] Officers Distefano and Jolly repeatedly asked Plaintiff to leave the area, and when Plaintiff did not comply, they instructed her to leave the fairgrounds.[14] Officers Distefano and Jolly tried to escort Plaintiff to her vehicle but Plaintiff resisted leaving, stopped multiple times, and attempted to turn around and talk to other individuals.[15] Because Plaintiff would not leave the fairgrounds when asked to do so, the Officers seized her cellphone, handcuffed her, and escorted her back to the tent.[16] Defendants state they informed Plaintiff of her rights, let her speak

---

[7] *Id* at 2.
[8] *Id.*
[9] *Id.*
[10] R. Doc. 1, p. 4.
[11] R. Doc. 20-3, p. 2.
[12] *Id* at 3.
[13] R. Doc. 20-3, p. 3.
[14] *Id.*
[15] *Id.*
[16] *Id.*

to an attorney, returned her cell phone, and released her with a summons for "Remaining after being Forbidden."[17] The charge was eventually dismissed.[18]

Plaintiff brought suit pursuant to 42 U.S.C. §1983 *et seq.*, alleging that the Officers, TPD, and the City's actions violated the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment.[19] Defendants have moved for summary judgment, asserting that Plaintiff has no evidence that her constitutional rights were violated by a policy, practice or custom of the City of Thibodaux and/or the Thibodaux Police Department, that defendant officers are protected by qualified immunity, and that Plaintiff cannot meet her burden to establish either the officers violated a constitutional right or the officers' actions were objectively unreasonable in light of law clearly established at the time of the misconduct.[20]

## **LAW AND ANALYSIS**

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[21] No genuine issue of material fact exists if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party.[22] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[23] Courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party.[24] The moving party bears the initial burden of showing the court the absence of any genuine issue

---

[17] *Id* at 4.
[18] R. Doc. 27, p. 2.
[19] R. Doc. 1, p.1, ¶1.
[20] R. Doc. 20-3, pp.1-2.
[21] Fed. R. Civ. P. 56(c)(2).
[22] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[23] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[24] *Scott v. Harris*, 550 U.S. 372, 378 (2007).

of material fact.[25] If the moving party meets this initial burden, the burden then shifts to the non-moving party to establish the existence of a genuine issue of material fact by showing that there is more than some doubt as to the material facts.[26] "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."[27]

### a. Qualified Immunity

Claims brought under §1983 which seek damages from defendants in their individual capacities are subject to the affirmative defense of qualified immunity.[28] Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[29] This doctrine protects "all but the plainly incompetent or those who knowingly violate the law" and courts will not deny immunity unless the existing precedent places the statutory or constitutional question beyond debate.[30] A plaintiff who seeks to overcome a qualified immunity defense must show (1) that the official committed a violation of a constitutional right; and (2) that the official's actions were "objectively reasonable" in light of a law which was "clearly established" at the time of the alleged violation.[31]

Defendants have raised a qualified immunity defense; thus, the burden is on the Plaintiff to demonstrate that the Officers are not entitled to qualified immunity.[32] Here, Plaintiff fails to

---

[25] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[26] *Matsushita*, 477 U.S. at 585-87.
[27] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[28] *Club Retro L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).
[29] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).
[30] *See Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011)(citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).
[31] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). *See also Anderson v. Creighton*, 483 U.S. 635, 640 (1987).
[32] *Bennett v. City of Grand Prairie, Tex.*, 883 F.2d 400, 408 (5th Cir. 1989). A qualified immunity defense alters the usual summary judgment burden of proof. *Brown v. Callahan*, 623 F. 3d 249, 253 (5th Cir. 2010). Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law. *Id.*

establish that the Officers committed a violation of a constitutional right. In her opposition, Plaintiff states that the Officers violated her Fourth and Fourteenth Amendment rights, alleging that the arrest, detention, and prosecution were without probable cause because it was either unclear whether Plaintiff interfered with the investigation, whether the Officers had the authority to order Plaintiff to leave the fair, or whether trying to leave from a different gate was refusal to leave the fair grounds.[33] Probable cause is determined by the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest which are sufficient for a reasonable to person to conclude that the suspect had committed or was committing an offense.[34] "Even law enforcement officials who reasonably but *mistakenly* conclude that probable cause is present are entitled to immunity."[35] Thus, this Court must determine whether the facts, viewed in a light most favorable to Plaintiff, support a finding that no reasonable officer would have believed probable cause existed to detain Plaintiff in violation of the Thibodaux City Ordinance ("TCO") 7-63.3, Entry on or Remaining in Places after Being Forbidden.

The undisputed facts presented by both parties establish that the Officers had probable cause to arrest Plaintiff and issue a citation because she refused to leave the fairgrounds after the Officers asked her to do so. Plaintiff argues that the Officers arrested her merely because she wanted to inform her husband that she needed to leave.[36] However, in her deposition, Plaintiff admits that she saw a body camera video of the incident where she stated "[t]hey were asking me to leave and I said, no."[37] TCO Sec. 7-63.3 states that no person without authority shall remain or attempt to remain, in or on immovable property, which belongs to another, after having been

---

[33] R. Doc. 27, p. 10.
[34] *Glenn v. City of Tyler*, 242 F.3d 307 (5th Cir. 2001).
[35] *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).
[36] R. Doc. 27, p. 5.
[37] Plaintiff's Dep. (¶23-25).

forbidden to do so.[38] Because Plaintiff refused to leave the fairgrounds after having been told to do so, the Officers did not unlawfully arrest her and, furthermore, they reasonably believed that the arrest was constitutional pursuant to TCO 7-63.3. Because the Officers had probable cause to arrest Plaintiff, they did not violate a clearly-established constitutional right and, as such, are entitled to qualified immunity.[39]

Plaintiff also argues that the Officers and the TPD did not have the authority or apparent authority to order Plaintiff to leave the fairgrounds. However, Defendants point to the affidavit of the then President of the Thibodeaux Volunteer Fire Department, who stated that the department "procures the services of the Thibodeaux Police Department and the Lafourche Parish Sheriff's Officer and authorizes them to provide security" for the event.[40] There is no summary judgment evidence presented to show that this statement is disputed. Police officers are entitled to assert a defense of official immunity under section §1983 based on the officer's reasonable belief that his or her actions were lawful and within the scope of his or her authority when the allegedly wrongful acts occurred.[41] Once the official has established that he or she acted within the scope of his or her authority, the burden shifts to the plaintiff to show that the official lacked good faith.[42] To overcome a qualified immunity defense, the plaintiff must establish that the official's allegedly wrongful conduct violated clearly established law.[43]

The Court finds there is no genuine dispute either that the Officers did not violate a clearly established law or that they acted reasonably when they arrested Plaintiff for failing to leave the

---

[38] Thibodaux City Ordinance Sec. 7-63.3
[39] Regarding the seizure of Plaintiff's phone, because the arrest was lawful, seizure of the cell phone was lawful incident to the arrest. *See Riley v. California*, 573 S.Ct. 373, 401-03 (2014). Although Plaintiff contends her phone was unlawfully searched, the Court agrees with Defendants that she has not identified any of the defendant officers as conducting such a search. *See* R. Doc. 20-3, pp. 12-13.
[40] R. Doc. 20-4.
[41] *Barker v. Norman*, 651 F.2d 1107, 1121 (5th Cir. 1981).
[42] *Id.*
[43] *Saldana v. Garza*, 684 F.2d 1159, 1163 (5th Cir. 1982).

fairgrounds when asked to do so. Because the Fire Department had authorized the TPD to provide security services for the fair, asking a patron to leave the fairgrounds certainly falls within the scope of an officer's authority when providing security services. Because Plaintiff has raised only the issue of the Officers' scope of authority and has failed to provide other grounds that the Officers lacked good faith in arresting Plaintiff, it follows that the Officers acted reasonably and within the scope of their authority and, therefore, they did not violate clearly established law. Accordingly, the Officers are entitled to qualified immunity.

### b. §1983 claims

Section §1983 imposes liability on anyone who, "under color of state law, deprives a person 'of rights, privileges, or immunities secured by the Constitution and laws.'"[44] Suits against state officials in their official capacities are treated as a suit against the state.[45] Because the real party in interest in an official capacity suit is the governmental entity and not the named individual, the "entity's 'policy or custom' must have played a part in the violation of federal law."[46] In *Will v. Michigan Dept. of State Police*, the Supreme Court held that "neither a state nor its officials acting in their official capacities are 'persons' under §1983."[47] Thus, the claims against the Officers are treated as a suit against the City and the TPD and the Officers cannot be held liable in their official capacities.

Under section §1983, a municipality cannot be held liable under a *respondeat superior* theory, but it may be held liable when execution of a government's official "policy or custom" inflicts the injury.[48] A city is only liable where there is a deliberate or conscious choice made by a

---

[44] *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).
[45] *Hafer v. Melo, et al*, 502 U.S. 21, 25 (1991).
[46] *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).
[47] *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).
[48] *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 691, 694 (1978).

municipality.[49] Requiring a plaintiff to identify an official policy ensures that municipalities will be held liable only for constitutional violations that result from the decisions of government officials whose acts can be fairly attributed to the municipality.[50]

To establish an official policy, a plaintiff may point to a policy statement promulgated by an official policy maker or to "a persistent widespread practice of city officials or employees, which, although not authorized by an officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents a municipal policy."[51] To establish the existence of a custom or policy, a plaintiff must allege that the unconstitutional conduct occurred in cases other than their own or, in rare circumstances, that the final policymaker took a single unconstitutional action.[52]

Here, Plaintiff has offered no evidence to show that the City or TPD failed to train their employees adequately[53] or that any official policy existed which established a persistent and widespread practice whereby the Officers committed constitutional violations that could fairly be attributed to the TPD or the City. Moreover, Plaintiff also fails to point to other instances where the TPD or its officers engaged in the same or similar alleged misconduct as Plaintiff alleges here. As such, Plaintiff does not state a cognizable §1983 claim against the TPD or the City.[54]

---

[49] *Goodman v. Harris County*, 571 F.3d 388, 396 (5th Cir. 2009). *See e.g., Monell*, 436 U.S. at 694 (stating that municipal liability requires a policy maker; an official policy; and a violation of constitutional rights through a policy or custom); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)(stating that isolated actions almost never trigger liability); *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)(stating that §1983 liability attaches where a deliberate choice to follow a course of action is made from various alternatives by policy makers).
[50] *Bryan Cty. Comm'rs v. Brown*, 520 U.S. 397, 404-05 (1997).
[51] *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010).
[52] *Id.*
[53] For a §1983 claim for failure to supervise or train to survive dismissal, the plaintiff must demonstrate that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998). As discussed above, the Court finds there has been no violation of the Plaintiff's constitutional rights.
[54] Plaintiff's husband asserted loss of consortium, services, and society as a result of the injuries sustained by his wife. R. Doc. 1. However, because Plaintiff has dropped her injury claim, R. Doc. 20, Exhibit E., her husband's claims fall and will also be dismissed.

## **CONCLUSION**

Accordingly, for the foregoing reasons, **IT IS ORDERED** that Defendants' Motion for Summary Judgment[55] is **GRANTED**, and that Plaintiffs' claims are dismissed with prejudice.

**New Orleans, Louisiana**, this   26th   day of February 2021.

*(signature)*
**GREG GERARD GUIDRY**
**UNITED STATES DISTRICT JUDGE**

---

[55] R. Docs. 20-3.